Martin H. Myers (SBN 130218)
Email: mmyers @covc.com
Jeffrey A. Kiburtz (SBN 228127)
Email: jkiburtz@cov.com
Rebecca A. Jacobs (SBN 294430)
Email: rjacobs@cov.com
COVINGTON & BURLING LLP
One Front Street, 35th Floor
San Francisco, California 94111-5356
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091

Attorneys for Plaintiff
THE WALT DISNEY COMPANY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| THE WALT DISNEY COMPANY, | Civil Case No.: |
|---|---|
| Plaintiff, | **MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL ARBITRATION** |
| v. | |
| AIG SPECIALTY INSURANCE COMPANY f/k/a CHARTIS SPECIALTY INSURANCE COMPANY, | **Hearing**<br>Date:<br>Time:<br>Courtroom:<br>Hon. |
| Defendant. | |

# TABLE OF CONTENTS

Page

FACTS AND BACKGROUND ...................................................................................1

ARGUMENT .................................................................................................................4

I. TWDC's Election of Arbitration "Shall Control." ..............................................4

II. The Federal Arbitration Act Compels Arbitration. ............................................7

    A. AIG Has Refused to Arbitrate But Has Endorsed JAMS..........................7

    B. The Basic Conditions of the FAA Are Met. ............................................8

        1. The Contract Involves Interstate Commerce ..........................................8

        2. The Arbitration Clause Is a Valid Agreement to Arbitrate ...................9

        3. The Dispute Falls Within the Scope of the Agreement to Arbitrate .....9

III. The Facts and Public Policy Require Arbitration. .............................................9

CONCLUSION ............................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ackerberg v. Citicorp USA, Inc.*,
   898 F. Supp. 2d 1172 (N.D. Cal. 2012) .................................................................. 4, 7

*Allied-Bruce Terminix Companies, Inc. v. Dobson*,
   513 U.S. 265 (1995) ..................................................................................................... 8

*Bank of Am., N.A. v. Micheletti Family P'ship*,
   No. 08-02902 JSW, 2008 WL 4571245 (N.D. Cal. Oct. 14, 2008) ............................. 8

*BG Grp., PLC v. Republic of Argentina*,
   134 S. Ct. 1198 (2014) ................................................................................................. 7

*Chiron Corp. v. Ortho Diagnostic Systems, Inc.*,
   207 F. 3d 1126 (9th Cir. 2000) ............................................................................. 6, 10

*Great Western Drywall, Inc. v. Interstate Fire & Cas. Co.*
   (2008) 161 Cal. App. 4th 1033 .................................................................................... 5

*Internat'l v. Nat. Union Fire Ins. Co.*,
   821 A.2d 323 (Del. Ch. 2002) .................................................................................. 1, 9

*Krause v. Barclays Bank Delaware*,
   No. 2:13-CV-01734-MCE-AC, 2013 WL 6145261 (E.D. Cal. Nov. 21,
   2013) ............................................................................................................................ 8

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (U.S. 1983) ............................................................................................ 6, 9

*Palmer v. Truck Ins. Exch.*
   (1999) 21 Cal. 4th 1109 ............................................................................................... 5

*Republic of Nicaragua v. Standard Fruit Co.*,
   937 F.2d 469 (9th Cir. 1991) ....................................................................................... 7

**Statutes**

9 U.S.C. § 1 ...................................................................................................................... 8

9 U.S.C. § 2 ...................................................................................................................... 8

9 U.S.C. § 4 ............................................................................................................. 8

Cal. Civ. Code § 1641 ............................................................................................ 5

Federal Arbitration Act ...................................................................................... 4, 7

**Other Authorities**

Rule 5(a)(1) ........................................................................................................ 3, 8

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL ARBITRATION

The Walt Disney Company ("TWDC") respectfully asks the Court to compel the defendant insurance company to arbitrate the parties' coverage dispute—as the insurance company promised to do. Defendant AIG Specialty Insurance Company ("AIG") sold an insurance policy that gives TWDC the right to elect arbitration of any coverage dispute. When the parties reached an impasse over coverage for an underlying lawsuit, TWDC elected arbitration and filed an arbitration demand with JAMS Los Angeles. TWDC then placed that arbitration on hold pending negotiations with AIG on certain arbitration elements. When those negotiations ended and TWDC notified JAMS Los Angeles to proceed, AIG responded that it would attempt to litigate the dispute in a courtroom.

The Alternative Dispute Resolution ("ADR") Clause of the AIG policy and all applicable authorities require that the dispute be arbitrated, not litigated in court. The only court that has issued a written opinion addressing AIG's interpretation of the clause at issue rejected AIG's position as a "nonsensical and unfair reading." *Qwest Comm.'s Internat'l v. Nat. Union Fire Ins. Co.*, 821 A.2d 323, 328–29 (Del. Ch. 2002). All elements necessary to compel arbitration are met. The AIG policy involves interstate commerce; the policy contains a valid agreement to arbitrate; and the dispute in question falls within the scope of the agreement to arbitrate.

The Court should compel AIG to participate in the arbitration TWDC filed at JAMS Los Angeles.

## FACTS AND BACKGROUND

TWDC seeks insurance coverage for an underlying lawsuit against one of its subsidiaries and other insureds (the "Lawsuit"). AIG, among several other insurance companies, sold TWDC insurance policies applicable to the Lawsuit. In the summer of 2017, after a few weeks of trial, the Lawsuit was resolved by settlement. All of TWDC's insurers in the same insurance program—except AIG and its one of its affiliates—provided or waived consent to settlement. All those insurers—again except AIG and its affiliate—agreed to contribute in full to the settlement. Declaration of Martin H. Myers ("Myers Decl."), ¶ 5. AIG declined to contribute and denied coverage. *Id.*

TWDC elected to arbitrate its dispute with AIG. The AIG policy "follows" (*i.e.*, incorporates) the controlling ADR Clause in the lead primary policy issued by Illinois Union Insurance Company. Myers Decl., Ex. 1 at § XIX; Ex. 2 at 1–2 of policy form; Ex. 3 at 2. That ADR Clause provides that the parties "shall submit any dispute or controversy arising out of or relating to this Policy . . . to the alternative dispute resolution ('ADR') process set forth in this Section." Myers Decl., Ex. 1 at § XIX. The policies define the "ADR process" as either "Mediation" (a term that expressly requires the American Arbitration Association's mediation process be followed)[1] *or* "arbitration." *Id.* While the policies let AIG elect between arbitration and mediation in the first instance, they specifically give TWDC "*the right to reject the choice by [AIG] at any time prior to its commencement.*" *Id.* (emphasis added). Indeed, the policies state that "*the choice by [TWDC] of ADR process shall control.*" *Id.* (emphasis added).

On June 22, 2017, AIG gave TWDC notice of its election of mediation and proposed that the parties mediate at JAMS. Myers Decl., Ex. 3 at 2. At the time, trial of the underlying Lawsuit was in full swing. Settlement discussions in the Lawsuit were only in the offing and not completed. TWDC responded to AIG six days later, on June 28, noting TWDC's right to choose the controlling alternative dispute resolution process. Myers Decl., Ex. 4 at 1. TWDC explained that it had "not determined . . . what ADR process it will elect," *id.* at 1, and that it would make its ADR election once the settlement of the Lawsuit—which had been brokered in the interim—had "been consummated," *id.* at 2. TWDC pointed out that AIG's position—*i.e.*, that its June 22 letter somehow "commenced" mediation, was in error. *Id.* at 1. In fact, no mediation commenced or occurred. The parties did not select a mediation provider. *Id.* ¶ 8. They

---

[1] "Mediation" is defined as a "non-binding process in which a neutral panel or individual assists the parties in reaching a settlement agreement." Further, "[t]o be considered Mediation under this Policy, the process must be as set forth in the Commercial Mediation Rules of the American Arbitration Association, or such other process as the Insurer may, at its sole option, approve." Ex. 1 at § XIX.

did not select a neutral mediator—either a panel or an individual. *Id.* They did not submit or exchange mediation briefs or materials. *Id.* They did not attend a conference. *Id.* Nothing. AIG conceded that the parties' dispute (about the mechanics of arbitration) "may be academic *in the event that [TWDC] agrees to mediation.*" Myers Decl., Ex. 5 at 2 (emphasis added). TWDC never did. *Id.* at ¶ 8.

Just as TWDC had promised, shortly after the Lawsuit settlement was consummated, TWDC notified AIG that TWDC "elect[ed] arbitration." Myers Decl., Ex. 6 at 1. Though the ADR Clause is silent as to ADR provider, the parties appeared to agree on JAMS, and TWDC filed its arbitration demand at JAMS Los Angeles that day. *Id.* Los Angeles was selected because California is one of the two locations in which arbitration properly may be commenced under the ADR Clause, and many of the documents, witnesses, and materials relevant to the dispute are located here. Myers Decl., Ex. 1 at § XIX and Declarations, Item 1 (identifying Burbank, California as the "Principal Address" of TWDC). However, TWDC also proposed to "discuss . . . with AIG . . . aspects of the arbitration," such as the make-up of the arbitration panel. Myers Decl., Ex. 6 at 1. The parties continued those discussions, as well as discussions as to arbitration between TWDC and another AIG insurer in the same insurance program, for about another month. *See* Myers Decl., Exs. 8, 10, and 11. The parties made some progress. As TWDC confirmed in a letter, the parties appeared to agree on the use of JAMS and its Rules and Procedures, and that JAMS Rule 5(a)(1) regarding commencement of arbitration had been satisfied. Myers Decl., Ex. 8 at 2. AIG did not dispute these items. Myers Decl., ¶ 14.

However, a week-and-a-half later the further negotiations broke down. *See* Myers Decl., Exs. 9 and 10. As a result, TWDC asked JAMS Los Angeles to resume the paused arbitration proceedings, Myers Decl., Ex. 9 at 1, and expressed regret that the parties could not "come to agreement on further aspects of the arbitration(s)," Myers Decl., Ex. 10. In response AIG wrote: "See you in court as they say." *Id.*

AIG thereafter resuscitated the claim that its June 22 letter had "commenced" mediation, contending that it never consented to the use of JAMS (or its rules). AIG baldly asserted that TWDC did not have the right to arbitrate. AIG made clear it would litigate, warning JAMS to "refrain from taking any action *ultra vires* while the parties litigate their differences." Myers Decl., Ex. 11 at 3. On October 13, JAMS LA notified TWDC and AIG that JAMS would not proceed with arbitration absent a court order on the grounds that the ADR Clause did not specifically "call for JAMS administration." Myers Decl., Ex. 12.

## ARGUMENT

The AIG policy, the law, and the facts all demonstrate that the parties' coverage dispute is subject to arbitration. AIG should be compelled to arbitrate its dispute against TWDC at JAMS Los Angeles. The Federal Arbitration Act requires courts to "rigorously enforce an agreement to arbitrate." *Ackerberg v. Citicorp USA, Inc.*, 898 F. Supp. 2d 1172, 1175 (N.D. Cal. 2012). AIG claims that it "commenced" mediation simply by saying "AIG commences mediation," that TWDC's election of arbitration cannot control, and that AIG is free to litigate. AIG's positions lack any merit. The only court to have addressed AIG's farfetched argument squarely rejected it as "nonsensical and unfair." *Qwest*, 821 A.2d at 328–29. The Court should reject it here as well.

### I. TWDC's Election of Arbitration "Shall Control."

The AIG policy makes clear that TWDC's election of arbitration "shall control." TWDC made that election, AIG refused to comply, and the Court should now compel arbitration.

The ADR Clause requires the parties to "submit any dispute or controversy … to the alternative dispute resolution . . . process set forth in this Section." Ex. 1 at § XIX. That language permits two forms of ADR, "non-binding **Mediation**" (a defined term) and "arbitration" which "shall be final and binding." *Id.* (emphasis in original). While the clause explains that "[e]ither an Insured or the Insurer may elect the type of ADR process," it goes on to say, "*provided, that the Insured [i.e., TWDC] shall have the right*

*to reject the choice by the Insurer [i.e., AIG] of the type of ADR process at any time prior to its commencement.*" *Id.* (emphasis added). AIG chose mediation through its June 22, 2017 letter, and TWDC promptly rejected that choice in its June 28, 2017 letter. Ex. 4. The ADR clause makes clear that TWDC's choice—not AIG's—"shall control." Ex. 1 at § XIX.

AIG's position—that it actually "commenced" a mediation on June 22 just by saying "AIG commences mediation"—lacks merit for at least four reasons. First, AIG's construction would render two parts of the ADR Clause illusory and superfluous. AIG seeks to negate: (1) TWDC's express right to reject AIG's choice of the ADR process, and (2) the provision stating TWDC's election will control. At a minimum, this violates the fundamental rules of insurance policy construction that clauses must be read to give effect to each part, to avoid redundancy and surplus. *Palmer v. Truck Ins. Exch.* (1999) 21 Cal. 4th 1109, 1116; *Great Western Drywall, Inc. v. Interstate Fire & Cas. Co.* (2008) 161 Cal. App. 4th 1033, 1042; Cal. Civ. Code § 1641.

Second, AIG's position violates and cannot be reconciled with the policy's express definition of "Mediation" as a "non-binding process in which a neutral panel or individual assists the parties in reaching a settlement agreement." Nothing was commenced before a neutral panel or individual who assisted the parties. Myers Decl., ¶ 8. The AIG policy further states that "[t]o be considered Mediation under this Policy, the process must be as set forth in the Commercial Mediation Rules of the American Arbitration Association, or such other process as the Insurer may, at its sole option, approve." No process commenced, let alone the specific process set forth in the AAA Mediation Rules or any process AIG identified and approved. Myers Decl., ¶ 8. In fact, TWDC informed AIG promptly after AIG stated its choice of mediation on June 22 (while trial of the underlying Lawsuit was ongoing) that mediation had *not* commenced. Ex. 4. Since that time neither side has taken any action whatsoever to mediate. Myers Decl., ¶ 8; *see also* Ex. 5.

Third, in the only written decision TWDC has located construing an arbitration clause identical in all material respects to the clause at issue here, the Delaware Chancery Court rejected AIG's position in short order. *Qwest*, 821 A.2d at 328–29. That case involved another AIG insurance company. The insurers in that case asserted, as AIG does here, that they "could always trump [the policyholder's] right to reject their choice of ADR simply by communicating their choice at the same time that they communicated [that] they had filed a demand for . . . mediation." *Id.* at 328. The *Qwest* court held it would "not countenance such a nonsensical and unfair reading of the contract." *Id.* "The only sensible and fair way to construe the policy language is to read it as requiring that, if the carriers make an election about the type of ADR, they must communicate that election . . . in a way that affords [the policyholder] a reasonable opportunity to reject the carriers' choice." *Id.*

Finally, the "merits" of AIG's position should be decided by the arbitration panel once convened. The policy's ADR Clause applies to "any dispute or controversy arising out of or relating to [the] Policy or its breach, termination or invalidity." Ex. 1 at § XIX. This is indistinguishable from what the Ninth Circuit has referred to as a "broad and far reaching" clause that requires arbitration of all issues between the parties, irrespective of "whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F. 3d 1126, 1131 (9th Cir. 2000) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26 (U.S. 1983)). JAMS declined to begin administration of the arbitration solely because the ADR Clause does not specifically "call for JAMS administration" (it does not identify any ADR provider), not because AIG's position is not arbitrable. AIG's argument about the meaning of the policy term "commence" is a dispute "relating to [the] Policy" that falls within the scope of the ADR Clause, and it too must be resolved in arbitration.

The principle that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses H. Cone*, 460 U.S. at 24–25, has been repeated

time and again by the United States Supreme Court, including in circumstances where, as here, the alleged dispute involves a threshold issue regarding whether the arbitration itself will proceed. "[C]ourts presume that the parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration." *BG Grp., PLC v. Republic of Argentina*, 134 S. Ct. 1198, 1207 (2014). Thus, procedural arguments about the arbitration clause itself are properly addressed in arbitration, not in this or any other court.

## II. The Federal Arbitration Act Compels Arbitration.

The Federal Arbitration Act requires courts to compel arbitration where a party refuses to arbitrate and the Act applies to the contract at issue. As established above, AIG has refused to arbitrate. To determine whether the Act applies, courts look to three factors: whether the contract involves interstate commerce; whether there is a valid agreement to arbitrate; and whether the dispute falls within the scope of the agreement to arbitrate. *See Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 477 (9th Cir. 1991); *Ackerberg*, 898 F. Supp. 2d at 1175. Each condition is met here.

### A. AIG Has Refused to Arbitrate But Has Endorsed JAMS.

As of October 6, AIG refused to arbitrate, writing to TWDC: "See you in court." Ex. 10. On October 9, AIG wrote to JAMS, "[w]e trust JAMS will refrain from taking any action *ultra vires* while the parties litigate their differences." Ex. 11 at 3. Because the ADR Clause does not specify JAMS as ADR provider, JAMS declined to begin administration without a Court order. Ex. 12.

AIG's repudiation of the contractual requirement that it arbitrate appears to be based on location, and not JAMS as ADR provider. The ADR Clause does not specify an ADR provider. Ex. 1 at § XIX. When AIG learned that TWDC had filed its arbitration demand at JAMS Los Angeles, AIG responded "our client would be amenable to using JAMS's New York office." Ex. at 2. As the parties attempted to negotiate further aspects of the arbitration, AIG consistently agreed to use JAMS and JAMS Rules and never suggested an ADR provider other than JAMS. Myers. Decl., ¶ 14; Exs. 6–8. On

September 25, TWDC noted again the parties' agreement on JAMS and JAMS Rules and specifically confirmed that the parties had satisfied Rule 5(a)(1) of the JAMS Rules and Procedures. Ex. 8. AIG never objected or said otherwise—at least, not until after further negotiations about the mechanics and location of the JAMS arbitration broke down. Myers Decl., ¶ 14.

The ADR Clause expressly provides for arbitration in California. Ex. 1 at § XIX. TWDC filed in Los Angeles, where many of the documents, witnesses and materials relevant to the dispute are located. AIG consistently agreed to use JAMS and JAMS Rules until it decided wrongfully to repudiate arbitration, and has offered no reason or explanation why arbitration should not proceed at JAMS Los Angeles pursuant to TWDC's demand.

The Court should compel arbitration of the parties' dispute at JAMS Los Angeles.

### B.   The Basic Conditions of the FAA Are Met.

In light of AIG's refusal to arbitrate, the FAA entitles TWDC to a court order compelling arbitration if three basic conditions are met. *See* 9 U.S.C. § 4 ("[The] party aggrieved by the alleged . . . refusal of another to arbitrate under a written agreement for arbitration [may] petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."). Namely, the contract must involve interstate commerce, it must contain a valid arbitration agreement, and the dispute must fall within the scope of that agreement.

#### 1.   The Contract Involves Interstate Commerce.

AIG cannot dispute that the AIG policy involves interstate commerce as required by 9 U.S.C. § 2. The FAA defines "commerce" to mean, among other things, "commerce among the several States . . . ." 9 U.S.C. § 1. Section 2's interstate commerce language is interpreted broadly. *See Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 268, 274–75 (1995). A contract made between citizens of separate states necessarily involves interstate commerce. *See, e.g., Krause v. Barclays Bank Delaware*, No. 2:13-CV-01734-MCE-AC, 2013 WL 6145261, at *2 (E.D. Cal. Nov. 21, 2013); *Bank of Am.,*

*N.A. v. Micheletti Family P'ship*, No. 08-02902 JSW, 2008 WL 4571245, at *4 (N.D. Cal. Oct. 14, 2008). TWDC maintains its corporate headquarters in Burbank, California. Ex. 1 at 1. AIG is headquartered in New York, New York. Ex. 2 at Declarations. The contract at issue concerns insurance for claims worldwide. Ex. 1 at § XV. There is no reasonable dispute that the policy involves interstate parties and interstate commerce.

### 2. The Arbitration Clause Is a Valid Agreement to Arbitrate

AIG, having incorporated the ADR Clause into its Policy (by "following form"), cannot now assert its adopted clause is invalid. The ADR Clause makes clear that AIG and TWDC established a valid agreement to arbitrate. Ex. 1 at § XIX. AIG agrees, having itself invoked the clause. Ex. 3; *see also Qwest*, 821 A.2d at 323 (AIG affiliate attempting to enforce essentially identical arbitration clause).

### 3. The Dispute Falls Within the Scope of the Agreement to Arbitrate

Nor can AIG contend that the scope of the dispute falls outside the ADR Clause. That clause is expansive. It states the parties "shall submit any dispute or controversy arising out of or relating to the Policy or the breach, termination, or invalidity thereof to the [ADR] process . . . ." Ex. 1 at § XIX. This language certainly covers AIG's breach of contract by refusing to cover the underlying Lawsuit, as alleged in the arbitration demand. AIG never has said otherwise.

AIG has refused to arbitrate, the AIG policy involves interstate commerce, the ADR Clause constitutes a valid agreement to arbitrate, and the dispute falls within the scope of the ADR Clause. Thus, TWDC is entitled to compel AIG to arbitrate.

### III. The Facts and Public Policy Require Arbitration.

AIG's wishes to arbitrate in New York rather than Los Angeles, and to accomplish that end has repudiated and violated its own ADR Clause based solely on an argument previously rejected by the only court to consider it as "nonsensical and unfair." Moreover, courts routinely make clear that public policy requires the enforcement of arbitration provisions whenever possible. *See, e.g., Moses H. Cone*, 460 U.S. at 24–25;

*Chiron*, 207 F. 3d at 1131. Here, the AIG policy language and the facts demand that the Court compel AIG to arbitrate this dispute at JAMS Los Angeles.

## CONCLUSION

Based on the foregoing, TWDC respectfully requests that the Court order AIG to proceed with arbitration at JAMS Los Angeles.

DATED: October 17, 2017

COVINGTON & BURLING LLP

By: _____
MARTIN H. MYERS
JEFFREY A. KIBURTZ
REBECCA A. JACOBS
Attorneys for Plaintiff
THE WALT DISNEY COMPANY